IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01004-RM-MJW

NIKKI BUCCIERI,

    Plaintiff,

v.

ELAINE L. CHAO, Secretary, U.S. Department of Transportation,

    Defendant.

## DECLARATION OF HEATHER CARUSO

I, Heather Caruso, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

**Background**

1. I make this declaration based on my personal knowledge, including records maintained in the ordinary course of business by the Federal Aviation Administration (FAA).

2. I have reviewed a copy of Plaintiff's Complaint in this case (Doc. 1) and the deposition I provided in this case on November 13, 2017.

3. I hold a Bachelor of Science degree from Embry-Riddle Aeronautical University.

4. I have been employed by the FAA since 2002 and have held the positions of air traffic controller, radar controller, and manager, including as the Front Line Manager (FLM) at Denver tower from 2014–2016.

5. Michael Valencia selected me for the position of Front Line Manager and was my second-level supervisor at times relevant hereto.

6. Upon becoming the Front Line Manager at Denver tower, I became operationally certified as an air traffic controller on the positions of ground and local control.

7. As an operationally certified controller at Denver tower, I am permitted to provide air traffic control services to aircraft departing and arriving the Denver International Airport (DIA).

8. Since 2016, I have held the position of Operations Manager at the Denver airport control tower.

9. In that position, I oversee approximately 6-7 Front Line Managers and am Plaintiff's second-level supervisor.

10. In the last five years, DIA has been ranked as either the fifth or sixth busiest airport in the country based on passenger volume.

11. Safety is the FAA's highest priority in fulfilling its function of providing air traffic control services in the national airspace system in the United States.

12. Safety considerations underpin all aspects of the FAA's operations and management decisions, including those involved with the selection of supervisors and the evaluation and oversight of employees.

13. Considerations of safety are of paramount importance and not subject to compromise.

**Front Line Manager vacancy selection process**

14. I met Plaintiff when I assumed my position at Denver tower.

15. I had no knowledge of Plaintiff prior to my coming to the Denver tower.

16. In May 2016, a Front Line Manager position at Denver tower became vacant and needed be filled (Vacancy Announcement Number ANM-AT-16-DEN-47725).

2

17. Michael Valencia, the Air Traffic Manager at Denver tower, asked me and another Front Line Manager, James Gillman, to participate on the selection panel to fill the FLM vacancy.

18. Individuals who applied for the position were screened by the Human Resources Department and a list of eligible applicants who met the basic criteria for the position were provided to the selection panel.

19. Mr. Gillman and I split the work of the selection panel equally.

20. Our mission was to provide Michael Valencia with a list of the top 3-4 most qualified candidates.

21. Mr. Valencia instructed us to review all of the candidates' qualifications and determine a short list of the higher qualified candidates.

22. After determining the shorter list, we would request manager's feedback and interview those applicants on the list.

25. Prior to participating on the selection panel, Mr. Valencia gave us general guidance about the selection process and needs of the Denver tower.

26. As part of the ranking process for candidates who applied for the Front Line Manager position, I reviewed each applicant's application package.

27. Mr. Gillman and I and jointly created a matrix based on nine criteria (and supervisor recommendations), we felt that it was generally important for a Front Line Manager to have.

28. Mr. Gillman and I formulated the general criteria prior to reviewing any of the applications for the Front Line Manager position.

3

29. The only minor modification to the criteria used to score applicants was that we chose not to credit with a point applicants who attended the Air Traffic Leadership Development Program (ATLDP) or Program for Emerging Leaders (PEL).

30. This change in the criteria was not made based on the fact that Plaintiff had applied for the position.

31. Mr. Gillman and I believed the change in criteria was justified because giving credit to an FLM applicant who participated in these programs was unfair and of limited value given how few controllers had the opportunity to participate in the program.

32. For instance, I have not participated in either program.

33. We used the following primary selection criteria to identify applicants best suited to fill the Front Line Manager position:

- <u>Front Line Manager experience (minimum 1 year in the position to receive credit)</u>
  The Front Line Manager ranks at Denver tower are short staffed. As such, it is crucial to recruit a Front Line Manager candidate who has either Denver tower and/or Front Line Manager experience.

- <u>Traffic Management experience</u>
  Being a traffic manager at any facility educates and trains a person to look at the whole National Airspace System. A traffic manager has a big picture view and understands how making a certain decision at his facility could impact another facility.

- <u>Staff experience or MSS 3 experience</u>
  The staff experience provides a person with the required knowledge of all the paper work requirements for a FLM.

- <u>Terminal Operational experience (Radar) at an Air Traffic facility</u>
  Denver tower is a limited tower radar facility. But it is extremely beneficial for a FLM to have background in radar. It helps the tower controller understand the terminal radar control operation and historically has made for a more well-rounded controller.

- <u>Denver Tower experience</u>
  Having this experience would shorten the training time for a new FLM at Denver tower.

4

- **Denver Tower Traffic Management experience**
  Denver tower's Traffic Management personnel have a greater understanding of the operation than controllers do. TMs understand the role Denver tower plays in the greater Denver area operation. They understand what configurations are used and understand the benefits and pitfalls of different operations. They have first-hand knowledge and experience of the communication and coordination required between surrounding facilities. TMs at Denver tower provide guidance to the FLMs concerning operational decisions.

- **Level 10 or higher Air Traffic Facility experience**
  Denver Tower is a Level 10 facility. FLM trainees are required to become operationally certified on all the control positions in the tower. It is beneficial to know that a candidate has previously certified at a busy facility, and therefore it would be less likely the trainee could not certify or would not require a longer training time at Denver tower.

- **Any FAA Tower experience**
  As a FLM at Denver tower, it is beneficial to have previous working knowledge of the FAA rules for tower controllers.

- **Any FAA Tower MSS2 experience** (minimum of 1 year in the position)
  A FLM from a tower has a different knowledge base than a FLM from a Center (en route facility) or TRACON (terminal radar approach control facility).

- **Supervisor recommendation**
  The supervisory recommendations give us insight into the candidates' soft skills and communications skills.

34. Supervisory recommendations were requested from the top 12 candidates.

35. The reason that one year in specific positions was included as a requirement was to ensure that an applicant had attained proficiency (and certification) in the position.

36. When a person is selected for an air traffic control position and/or a Frontline Manager position with the FAA, there is a several-month training period during which time the selectee holds the new title but is not certified to act in the position without supervision.

37. In Plaintiff's case, she accepted a Front Line Manager position at the Kansas City Downtown Airport in Kansas City, Missouri, and was serving in that position at the time the vacancy in the Denver tower was announced.

38. Plaintiff failed to become operationally certified as a Front Line Manager at the Kansas City Downtown Airport (an airport with less traffic than DIA) and returned to Denver tower as a controller.

39. Consequently, her experience in that position is of indeterminate value for determining whether she could perform in another position, such as the Front Line Manager position at Denver tower.

40. Because the Denver tower is located in a geographic location of the country deemed desirable by other FAA employees, many candidates apply for positions there.

41. Prior to reviewing the applications, I was not aware that Plaintiff had applied for the position.

42. Mr. Valencia was the selecting official for the position, but he did not dictate what criteria Mr. Gillman and I used to rank the applicants and recommendations made to him.

43. After making an initial list of qualified candidates, Mr. Gillman and I alone interviewed seven of the top nine candidates over the telephone (two were not able to be interviewed for reasons beyond our control).

44. Plaintiff did not make the list of candidates to be interviewed.

45. Plaintiff did not rank as high as other candidates because she was lacking in experience and air traffic diversity. For example, the plaintiff did not have experience in a Traffic Management position, as did other applicants.

46. The list of candidates provided to Mr. Valenica were ranked from top to bottom.

47. As part of the ranking process, Mr. Gillman and I contacted the top 12 applicants' supervisors for input based on a questionnaire that we provided to them.

48. Mr. Gillman and I ultimately provided Michael Valencia with a list of three candidates who we felt were the best fit for the vacant position with a fourth candidate listed as an alternate.

49. At the time that I provided input on the list of candidates to Mr. Valencia, I was not aware that Plaintiff has been engaged in protected EEO activity.

50. Whether or not any of the applicants engaged in prior EEO activity was not considered in any respect in our recommendation to Mr. Valencia.

51. I did not exclude Plaintiff from the list provided to Mr. Valencia because of her gender.

52. For the record, my gender is female.

53. I did not discriminate or retaliate against Plaintiff in my ranking and recommendations made in collaboration with Mr. Gillman and provided to Mr. Valencia.

54. Mr. Valencia selected Neil Hommerding for the Front Line Manager position.

55. I am not aware of any attempt by Mr. Valencia or anyone else to preselect Mr. Hommerding for the FLM position.

**PROCs**

56. Performance Record of Conferences (PROCs) are written records of conversations managers have with their staff concerning their performance whether positive or negative.

57. As an Operations Manager, I would expect that a Front Line Manager would be having discussions on a periodic basis about the performance of staff controllers at Denver tower, whether their performance was satisfactory or unsatisfactory.

_[signature]_ Dated: February 7, 2018
Heather Caruso
Operations Manager
Denver Airport Tower
Denver, Colorado